IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**BRANDALE BLACKBURN,**[1]
**#M54199**

             **Plaintiff,**

v.

**SECURITY STAFF,**
**PHILIP K. ROYSTER,**
**TERRY E. BROOKS,**
**ZACHARY D. FENTON,**
**JOSHUA A SCHOENBECK,**
**ANTHONY D. WILLS,**
**JOHN DOE 1,**
**ANTHONY B. JONES, and**
**DIRECTOR OF IDOC,**

             **Defendants.**

Case No. 22-cv-01713-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

    Plaintiff Brandale Blackburn, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while at Menard Correctional Center. The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth*

---

[1] The Clerk of Court is **DIRECTED** to correct the spelling of Plaintiff's name as provided in the Complaint. (Doc. 1).

*Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### MOTION TO AMEND

After filing his Complaint, Plaintiff filed a motion asking to amend paragraphs 53 and 73 of the Complaint, modifying the claims against John Doe 1, and to add the Director of IDOC as a defendant. (Doc. 9). Generally, the Court does not allow piecemeal amendments to a complaint. An amended complaint supersedes and replaces the original complaint and renders the original void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). However, as a one-time courtesy, the Court will allow Plaintiff to amend the Complaint as stated in the motion, and the motion to amend is granted. The Clerk of Court will be directed to add the Director of IDOC as a party to this case. Going forward, Plaintiff is advised that an amended complaint must stand on its own and include all allegations against all defendants.

### THE COMPLAINT

Plaintiff alleges the following: On August 25, 2021, while in "group," Plaintiff requested to speak to a crisis team member. (Doc. 1, p. 4). A mental health staff member, Regelsperger, attempted to do a crisis evaluation of Plaintiff in front of the other inmates in group. Plaintiff asked for the crisis evaluation to be done in private. Regelsperger refused. (*Id.* at p. 5).

Sergeant Royster and Correctional Officers Brooks and Fenton then arrived at the group room. Plaintiff notified them that he needed a crisis team member and that Regelsperger had not performed a crisis evaluation. (Doc. 1, p. 5). The officers responded that Plaintiff "was going to get his crisis evaluation." (*Id.* at p. 6). Royster, Brooks, and Fenton took Plaintiff to North 2, 6 gallery, and they told him he was going back to his cell. They then began pushing him. (*Id.*). Plaintiff again stated he needed a crisis team member, and Royster, Brooks, and Fenton started hitting and kicking him. Plaintiff was then slammed to the floor. (*Id.* at p. 7). Even though Plaintiff was shackled and not resisting, the officers yelled, "Stopped resisting!" (*Id.* at p. 8). Royster next

fired pepper balls with a "pava launcher" at Plaintiff's back and legs. (*Id.*).

Royster, Brooks, and Fenton put a spit mask over Plaintiff's face and began to tighten the mask and choke Plaintiff with their hands. (Doc. 1, p. 9). He was then dragged down and then up the stairs. (*Id.* at p. 10). The officers took Plaintiff to the infirmary in North 2. (*Id.* at p. 11). While being taken to North 2, the officers hit him, kneed him, bent his hands and wrists, and tightened his handcuffs. (*Id.*).

At the infirmary, Plaintiff notified Nurse Engelage that the right side of his face was swollen and bruised, his left wrist and ankle were swollen and bleeding, and that he had bruises on his neck, back, and leg area. (Doc. 1, p. 12). He did not receive a proper medical examination, however, because he had the spit mask on over his face, and he was shackled down and handcuffed. (*Id.* at p. 13). Plaintiff then saw Draper, a mental health staff member, who placed him on crisis watch. (*Id.*).

From the infirmary, Plaintiff was taken to a holding tank where Fenton made racial comments towards him, and Royster sprayed him with pepper spray in the face at close range for no reason. (Doc. 1, p. 14-15). Royster, Brooks, and Fenton refused to allow Plaintiff to clean himself and flush his eyes. Plaintiff was then placed in cell 507. (*Id.* at p. 15).

In the cell, the sink and toilet were not working. Plaintiff told and the gallery officer, Engelage, that he needed his sink and toilet "turned on." (Doc. 1, p. 15). A few hours later, the hot water was turned on but not the cold water or the toilet. (*Id.* at p. 16). Plaintiff also informed Engelage and other staff that he would like to speak with a staff member of internal affairs and would like pictures taken of his injuries. No one ever came. (*Id.*). During second shift, Plaintiff asked the gallery officer to turn on the cold water for the sink and the toilet, and the gallery officer did so. (*Id.* at p. 17).

On August 25, 2021, Plaintiff was served with a disciplinary ticket for allegedly assaulting

staff and disobeying a direct order written by Royster and Brooks. (Doc. 1, p. 17). He had a disciplinary hearing before Adjustment Committee Members Anthony Jones and Joshua Schoenbeck on September 7, 2021. (*Id.* at p. 18). Jones and Schoenbeck did not call the witnesses Plaintiff had requested. Plaintiff was found guilty without any substantial evidence, and his statement was not included in the Adjustment Committee's final summary. He was sentenced to three months in segregation, three months C-grade status, and three months of visiting restrictions.

### PRELIMINARY DISMISSALS

Plaintiff asserts that Defendants IDOC Director, Warden Anthony Wills, Anthony Jones, and Joshua Schoenbeck violated his rights protected by the Equal Protection Clause of the Fourteenth Amendment. (Doc. 1, p. 18-19, 20; Doc. 9, p. 1-2). Plaintiff, however, provides no factual allegations suggesting such claim. He does not allege that he was singled out and treated differently from others similarly situated. *See Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016); *Forgue v. City of Chi.*, 873 F.3d 962, 968 (7th Cir. 2017); *Brown v. Budz,* 398 F.3d 904, 916 (7th Cir. 2005). Accordingly, his equal protection claims are dismissed.

The Court also dismisses all claims against Security Staff. To successfully plead a claim, a plaintiff must make plausible allegations against individuals. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a plaintiff does nothing but state that a group of people harmed him without providing more, all he has done is establish that there is a "sheer possibility" that someone in that group harmed him. Because Plaintiff does not describe the unknown security staff members or identify particular acts or omissions by any specific individual of that group who violated his constitutional rights, all claims against Security Staff are dismissed without prejudice.

Finally, Regelsperger, Salger, Draper, Nurse Engelage, and Officer Engelage are described in statement of claim but not listed in the case caption. When parties are not listed in the case

caption, the Court will not treat them as defendants. *See* FED. R. CIV. P. 10(a) (title of complaint "must name all the parties"); *Myles v. United States,* 416 F.3d 551, 51-52 (7th Cir. 2005) (to be considered a proper party, defendant must be "specif[ied] in the caption"). Accordingly, any claims Plaintiff intended to bring against these individuals are also dismissed without prejudice.

## DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following counts:

**Count 1:** Eighth Amendment claim against Royster, Brooks, and Fenton for the use of excessive force against Plaintiff on August 25, 2021.

**Count 2:** Illinois state law claim of assault and battery against Royster, Brooks, and Fenton.

**Count 3:** Illinois state law claim of intentional infliction of emotional distress against Royster, Brooks, and Fenton.

**Count 4:** Illinois state law claim of negligence against Royster, Brooks, and Fenton.

**Count 5:** Eighth Amendment claim against Royster, Brooks, and Fenton for refusing to allow Plaintiff to clean himself after spraying him with pepper spray and the "pava launcher."

**Count 6:** Fourteenth Amendment claim against Royster, Brooks, Schoenbeck, Jones, Wills, and IDOC Director for denying Plaintiff due process in connection with the issuance of a false disciplinary ticket and the subsequent disciplinary hearing.

**Count 7:** Eighth Amendment failure to intervene claim against IDOC Director and Warden Wills.

**Count 8:** Eighth Amendment conditions of confinement claim against Royster, Brooks, and Fenton for placing Plaintiff in a cell without a working toilet and sink.

**Count 9:** Illinois state law claim of intentional infliction of emotional distress against Royster, Brooks, and Fenton for placing Plaintiff in a cell without a working toilet and sink.

**Count 10:** First Amendment retaliation claim against Royster, Brooks, Fenton,

and Jones.

**Count 11:**    Illinois state law claim of negligent spoliation against John Doe 1.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Counts 1, 2, 3, and 4

Plaintiff's claims against Royster, Brooks, and Fenton for the use of excessive force against him on August 25, 2021, survive screening. *See Wilborn v. Ealey*, 881 F. 3d 998, 1006 (7th Cir. 2018).

Because Plaintiff's state law claims involve the same facts as his Eighth Amendment excessive force claim, the Court will exercise supplement jurisdiction, and Counts 2, 3, and 4 also survive screening against Royster, Brooks, and Fenton. *See* 28 U.S.C. § 1367(a); *Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 547-48 (7th Cir. 2018) (discussing assault and battery under Illinois law); *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (discussing intentional infliction of emotional distress under Illinois law); *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (discussing negligence under Illinois law).

### Count 5

Plaintiff claims that after being shot with pepper balls and sprayed with "o.c. pepper spray," Royster, Brooks, and Fenton refused to let him clean and flush his eyes. Although is not clear how long Plaintiff had to wait until he was able to clean himself, at this stage, Plaintiff's allegations of cruel and unusual punishment against Royster, Brooks, and Fenton are sufficient for Count 5 to

---

[2] *See Twombly*, 550 U.S. at 570.

proceed. *See Kervin v. Barnes,* 144 F. App'x 551, 552 (7th Cir. 2005) ("[w]hile detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering, holding the inmate until the disturbance has clearly ended does not, nor does waiting 10 to 20 minutes before letting him wash off the spray") (internal citations omitted).

**Count 6**

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). Generally, prisoners "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017). *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). *See also Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011) ("Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause."). In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Lisle,* 933 F.3d at 721 (citing *Marion*, 559 F.3d at 697).

Because Plaintiff was found guilty of the charges stated in the disciplinary ticket, he was sentenced to three months in segregation, three months C-grade status, and three months visiting restrictions. He does not describe his conditions of confinement during this time, and the placement in segregation for this period of time, even as a result of a false disciplinary ticket and improper

disciplinary hearing procedures, does not, standing alone, plead a loss of liberty that requires due process. *See Lekas v. Briley,* 405 F. 3d 602, 603 (7th Cir. 2005) (holding that three months in segregation under investigative status without additional facts does not implicate a liberty interest). Additionally, the reduction in grade status and the loss of visitation privileges also do not implicate a liberty interest. *See Woody v. Zatecky,* 594 F. App'x 311, 312 (7th Cir. 2015); *Hoskins v. Lenear*, 395 F. 3d 372, 375 (7th Cir. 2005). Accordingly, Count 6 is dismissed without prejudice.

### Count 7

Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). An inmate asserting a failure to intervene claim under Section 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer must show that the officers had reason to know that excessive force was being used, and the officers had a "realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 324 F.3d 763, 774 (7th Cir. 2005) (quoting *Yang*, 37 F.3d at 284 (7th Cir. 1994)).

Plaintiff states that he is suing the IDOC Director for "failure to protect and intervene and excessive force because he clearly had knowledge of my due process violation but still denied my grievance." (Doc. 9, p. 2). Similarly, Plaintiff is suing Warden Anthony Wills for failure to intervene. (Doc. 1, p. 21). These allegations are not sufficient to proceed against either Defendant. Plaintiff does not plead any facts suggesting that the IDOC Director or Warden Wills had reason to know that officers were going to physical assault Plaintiff and that they had an opportunity to intervene to prevent the harm. Additionally, the IDOC Director and Warden Wills cannot be held liable for the excessive because they are in a supervisory role, as there is no *respondeat superior* liability under Section 1983.

To the extent Plaintiff is claiming that the IDOC Director and Warden Wills failed to

intervene in his guilty sentence after he wrote a grievance about the improper disciplinary procedures, the claim is also dismissed. Plaintiff has failed to plead that he was denied a liberty interest requiring due process. Thus, a claim that the IDOC Director and Warden Wills did not intervene in the denial of due process also fails. For these reasons, Count 7 is dismissed without prejudice.

**Counts 8 and 9**

Plaintiff has failed to state a claim for cruel and unusual punishment regarding the conditions of his confinement in cell 507 against Royster, Brooks, and Fenton. (Doc. 1, p. 15). Plaintiff states that after he was placed in cell 507, he noticed the sink and toilet were not functioning. He informed the first shift gallery officer who turned on the hot water to the sink, but the cold water and toilet water remain not functional. Plaintiff then told the second shift gallery officer who turned on the cold water for the sink and toilet. (*Id.* at p. 17).

First, Plaintiff does not allege that Royster, Brooks, and Fenton were aware that the toilet and sink were not working properly in his cell. To be held liable under the Eighth Amendment, a defendant must have "known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring." *Board v. Farnham,* 394 F. 3d 469, 478 (7th Cir. 2005). Second, the denial of running water to Plaintiff's cell for a few hours does not violate the Eighth Amendment and as pled, did not result in an extreme deprivation of life's necessities. *See Ramirez v. Beatty*, No. 93–2306, 1994 WL 75897, at *3 (7th Cir. Mar. 8, 1994); *Harris v. Fleming,* 839 F. 2d 1232, 1235 (7th Cir. 1988). Count 8 is dismissed without prejudice.

Because Plaintiff is not proceeding on a constitutional conditions of confinement claim under Section 1983, the Court declines to exercise supplemental jurisdiction over the state law intentional infliction of emotional distress claim regarding the same set of facts. Count 9 is dismissed without prejudice.

### Count 10

Plaintiff claims that he was placed in cell 507 without running water out of retaliation. (Doc. 1, p. 15). He also states that he is suing Jones for retaliation. (*Id.* at p. 21). Plaintiff, however, has not alleged what First Amendment conduct he engaged in to spur the retaliation. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted). Accordingly, Count 10 is dismissed without prejudice.

### Count 11

Under Illinois law, a plaintiff can bring a claim for negligent spoliation of evidence. *Borsellino v. Goldman Sachs Group, Inc*., 477 F.3d 502, 509-10 (7th Cir. 2007) (citing *Boyd v. Travelers Ins. Co*., 652 N.E.2d 267, 273 (Ill. 1995)). Negligent spoliation is not an independent tort but rather is a type of negligence. *Id.* As such, Plaintiff must allege the existence of a duty to protect the evidence allegedly destroyed, a breach of that duty, causation, and damages. *Id.* As a general principle, there is no duty to preserve evidence under Illinois law. *Olivarius v. Tharaldson Prop. Management, Inc*., 695 F. Supp. 2d 824, 829 (N.D. Ill. 2010) (citing *Boyd v. Travelers Ins. Co*., 652 N.E.2d 267, 269–70 (Ill. 1995)).

Plaintiff claims that John Doe 1 violated state law negligent spoliation of evidence when "John Doe never came to take pictures of [his] injury." (Doc. 9, p. 1). Plaintiff's Complaint does not include factual allegations to support any element of a claim for negligent spoliation against John Doe. Notably, Plaintiff has not described facts establishing that John Doe owed a duty to Plaintiff to photograph his injuries or special circumstances giving rise to such duty. Plaintiff requested the gallery officers to inform internal affairs that he wanted photos taken of his injuries, but he does not assert that John Doe was in fact notified of his request. *See Martin v. Keeley & Sons, Inc.,* 979 N.E.2d 22, 31 (Ill. 2012). Plaintiff also has not plead how the failure to take the photos will result in his inability to prove an otherwise valid claim. *Boyd,* 652 N.E. 2d at 271. *See*

*also Schaefer v. Univ. Scaffolding & Equipment, LLC,* 839 F. 3d 599, 611 (7th Cir. 2016). For these reasons, Count 11 is dismissed without prejudice.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff has filed two motions asking the Court to recruit counsel to represent him in this matter, as well as a supplement. (Doc. 2, 8, 11). As a litigant in a civil case, he has no right to counsel. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). However, a District Court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915 (e)(1) (emphasis added). Plaintiff has not submitted any documentation to demonstrate to the Court that he is indigent. As he has paid the filing fee in full and is not proceeding *in forma pauperis* in this case, the Court has no basis for concluding that he is unable to afford counsel as is required by Section 1915(e). Thus, motions are denied without prejudice.

Plaintiff may refile his motion, but he should provide the Court an affidavit of financial status and supporting documentation such as a copy of his prisoner trust fund account. See Amendments to the Local Rules 83.9(a).

### MOTION FOR URGENT JUDICIAL NOTICE

Plaintiff has filed a motion stating that the staff at Pontiac Correctional Center has lost his legal box, which contains documents relevant to this case, including witness affidavits, medical records, grievances, a copy of his Complaint, and legal books. (Doc. 16). Plaintiff asks the Court to contact Pontiac Correctional Center and IDOC Administration to find his legal box.

The Court construes the motion as a request for a preliminary injunction. The Court may issue emergency injunctive relief only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." *See* FED. R. CIV. P. 65(b)(1)(A). Furthermore, injunctive relief is appropriate only if it seeks relief of the same character sought in the underlying

suit. *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *Daniels v. Dumsdorff,* No. 19-cv-00394-NJR, 2019 WL 3322344 at *1 (S.D. Ill., July 24, 2019). Plaintiff has not satisfied these requirements. The recent incidents described regarding the misplacement of his legal materials in violation of the First Amendment are outside the allegations contained in the Complaint, which do not include an access to courts claim. A motion for injunctive relief is not a proper avenue to pursue additional claims against individuals not named in the Complaint. Accordingly, the motion is not properly brought in this case and is **DENIED.**

The Court will, however, direct the Clerk of Court to send him a copy of the Complaint as a one-time courtesy. Additionally, as this case progresses to merits discovery, and if documents necessary to prosecuting this case remain missing, Plaintiff may file a motion notifying the Court.

### DISPOSITION

For the reasons stated above, the Motion to Amend the Complaint is **GRANTED.** (Doc. 9). The Clerk of Court is **DIRECTED** to add Director of IDOC as a defendant on the docket sheet. The Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1, 2, 3, 4,** and **5** will proceed against Defendants Royster, Brooks, and Fenton. **COUNTS 6, 7, 8, 9, 10,** and **11** are **dismissed without prejudice.** Because there are no surviving claims against Defendants Schoenbeck, Wills, John Doe 1, Jones, and Director of IDOC, they are **DISMISSED without prejudice.** Defendants Security Staff are **DISMISSED with prejudice.**

Because Plaintiff's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act. The Clerk is further **DIRECTED** to correct the docket in accordance with footnote 1.

The Motions for Recruitment of Counsel are **DENIED.** (Doc. 2, 8). The Motion for Urgent Judicial Notice is **DENIED.** (Doc. 16). The Clerk of Court is **DIRECTED** to send Plaintiff a copy

of his Complaint (Doc. 1) and Motion to Amend (Doc. 9). The Motion for Status is **DENIED as moot** in light of this Order. (Doc. 17).

The Clerk of Court shall prepare for Royster, Brooks, and Fenton the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint, the Motion to Amend (Doc. 9), and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of

prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED:   March 28, 2023**

                                                                     *s/Stephen P. McGlynn*
                                                                     **STEPHEN P. MCGLYNN**
                                                                       **United States District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.