IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BRANDALE BLACKBURN, #M54199 | |
| Plaintiff, | Case No. 22-cv-01713-SPM |
| v. | |
| PHILIP K. ROYSTER, *et al.,* | |
| Defendants. | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for leave to file amended complaint filed by Plaintiff Brandale Blackburn. (Doc. 30). Plaintiff, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pontiac Correctional Center, filed this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while at Menard Correctional Center. After conducting a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff is proceeding on claims regarding the use of excessive force against him by Defendants Royster, Brooks, and Fenton in violation of the constitution and state law. (Counts 1-5). Plaintiff seeks to amend the complaint to cure deficiencies in the original Complaint.

### MOTION TO AMEND

Pursuant to Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleadings once as a matter of course…if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." FED. R. CIV. P. 15(a)(1)(B). In all other instances, a party may amend only with the opposing party's written consent or the court's leave. FED. R. CIV. P. 15(a)(2).

At the time Plaintiff filed his motion, Defendants had not filed responsive pleadings. Therefore, Plaintiff is allowed to amend his Complaint as a matter of course. The motion for leave to file amended complaint is granted, and the Clerk of Court will be directed to file the proposed amended on the docket as the First Amended Complaint. (Doc. 30).

The First Amended Complaint, however, is still subject to review under 28 U.S.C. § 1915A. Pursuant to Section 1915A, any portion of the First Amended Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### THE FIRST AMENDED COMPLAINT

The alleged facts in the First Amended Complaint do not vary greatly from those alleged in the original Complaint. Plaintiff claims that on August 25, 2021, he was in "group" with other inmates and behavioral health therapists Regelsperger and Salger. When group ended, Plaintiff requested to speak to a crisis team member. Regelsperger attempted to do a crisis evaluation of Plaintiff in front of the other inmates in group. Plaintiff asked for the crisis evaluation to be done in private. Regelsperger refused.

Sergeant Royster and Correctional Officers Brooks and Fenton, members of the emergency response team, then arrived at the group room. Plaintiff notified them that he needed a crisis team member and that Regelsperger had not performed a crisis evaluation. The officers responded that Plaintiff "was going to get his crisis evaluation." Royster, Brooks, and Fenton took Plaintiff to North 2, 5 gallery, and they told him he was going back to his cell because Regelsperger and Salger had said that Plaintiff had refused to speak with a crisis team member. They then began pushing him. Plaintiff again stated he needed a crisis team member, and Royster, Brooks, and Fenton started hitting and kicking him. Plaintiff was slammed to the floor. Even though Plaintiff was shackled and not resisting, the officers yelled, "Stopped resisting!" Royster next fired pepper balls

Page 2 of 16

with a "pava launcher" at Plaintiff's back and legs.

Royster, Brooks, and Fenton put a spit mask over Plaintiff's face and began to tighten the mask and choke Plaintiff with their hands. He was then dragged down and then up the stairs. The officers took Plaintiff to the infirmary in North 2. While being taken to North 2, the officers continued to hit him, knee him, bent his hands and wrists, and tightened his handcuffs.

At the infirmary, Plaintiff notified Nurse Engelage that (1) the right side of his face was swollen and bruised; (2) his left wrist and ankle were swollen and bleeding; (3) he had bruises on his neck, back, and leg area; and (4) he was in excruciating pain. He did not receive a proper medical examination, however, because he had the spit mask on over his face, and he was shackled down and handcuffed. Plaintiff then saw Draper, a mental health staff member. Plaintiff told Draper that he was not in his right state of mind, and Draper placed him on crisis watch.

From the infirmary, Plaintiff was taken to a holding tank where Fenton made racial comments towards him, and Royster sprayed him with pepper spray in the face at close range for no reason. Royster, Brooks, and Fenton refused to allow Plaintiff to clean himself and flush his eyes. Plaintiff was then placed in cell 507.

In the cell, the sink and toilet were not working. Around 2:00 p.m., Plaintiff notified the gallery officer, Engelage, that he needed his sink and toilet "turned on." The hot water was turned on but not the cold water or the toilet. Plaintiff also informed Engelage and other staff that he would like to speak with a staff member of internal affairs and would like pictures taken of his injuries. No one came that day. During second shift, around 4:00 p.m., Plaintiff asked the gallery officer to turn on the cold water for the sink and the toilet. The gallery officer did so.

On August 25, 2021, Plaintiff was served with a disciplinary ticket for allegedly assaulting staff and disobeying a direct order written by Royster, Brooks, and Fenton. He had a disciplinary hearing before Adjustment Committee Members Anthony Jones and Joshua Schoenbeck on

Page 3 of 16

September 7, 2021. Jones and Schoenbeck did not call the witnesses Plaintiff had requested, did not properly investigate the accusations against Plaintiff, and did not view the video footage of the assault. Plaintiff was found guilty without any substantial evidence, and his statement was not included in the Adjustment Committee's final summary. He was sentenced to three months in segregation, three months C-grade status, and six months of visiting restrictions. Warden Wills concurred in the finding.

On September 11, 2021, Plaintiff spoke with an officer from the internal affairs unit, John Doe, about the assault on August 25, 2021. Plaintiff explained what occurred, but John Doe changed Plaintiff's statement in a conspiracy with Royster, Brooks, and Fenton to cover up the officers' misconduct. John Doe also did not take any pictures of Plaintiff's injuries.

### PRELIMINARY DISMISSALS

The Court dismisses Plaintiff's claims of retaliation, as he has not alleged what First Amendment conduct he engaged in to motivate the retaliatory conduct on the part of any Defendants. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (citing *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (other citations omitted).

Throughout the First Amended Complaint Plaintiff alleges that Defendants violated various policies of Wexford and the Illinois Department of Corrections. However, the violation of a prison or corporate policy does not form the basis for a constitutional claim. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Thus, to the extent Plaintiff is attempting to hold Defendants liable for the violation of internal regulations and policies, such claims are also dismissed.

DISCUSSION

Based on the allegations of the First Amended Complaint, the Court finds it convenient to

designate the following counts:

**Count 1:**   Health Insurance Portability and Accountability Act (HIPAA) claim against Regelsperger and Salger for attempting to conduct Plaintiff's crisis evaluation in front of other inmates.

**Count 2:**   Americans with Disabilities Act (ADA) claim against Regelsperger and Salger for refusing to conduct Plaintiff's crisis evaluation in private.

**Count 3:**   Fourteenth Amendment equal protection claim against Regelsperger for refusing to conduct Plaintiff's crisis evaluation in private and against Salger for failing to intervene to prevent the discriminatory treatment of Plaintiff.

**Count 4:**   Eighth Amendment claim against Regelsperger, Salger, Royster, Brooks, and Fenton for deliberate indifference to Plaintiff's mental health needs by denying him access to a crisis team member.

**Count 5:**   Claim against Regelsperger, Salger, Royster, Brooks, and Fenton for conspiring to deny Plaintiff access to a crisis team member.

**Count 6:**   Eighth Amendment claim against Royster, Brooks, and Fenton for the use of excessive force against Plaintiff on August 25, 2021.

**Count 7:**   Illinois state law claim of assault and battery against Royster, Brooks, and Fenton.

**Count 8:**   Illinois state law claim of intentional infliction of emotional distress against Royster, Brooks, and Fenton.

**Count 9:**   Illinois state law claim of negligence against Royster, Brooks, and Fenton.

**Count 10:**   Eighth Amendment claim against Nurse Engelage for deliberate indifference to Plaintiff's serious medical needs by failing to conduct a proper examination and document his injuries following the use of excessive force on August 25, 2021.

**Count 11:**   Claim against Nurse Engelage, Royster, Brooks, and Fenton for conspiring to coverup the assault against Plaintiff that occurred on August 25, 2021.

**Count 12:**  Eighth Amendment claim against Royster, Brooks, and Fenton for refusing to allow Plaintiff to clean himself after spraying him with pepper spray and the "pava launcher."

**Count 13:**  Eighth Amendment conditions of confinement claim against Officer Engelage, Royster, Brooks, and Fenton for placing Plaintiff in a cell without a working toilet and sink.

**Count 14:**  Illinois state law claim of intentional infliction of emotional distress against Officer Engelage, Royster, Brooks, and Fenton for placing Plaintiff in a cell without a working toilet and sink.

**Count 15:**  Claim against Officer Engelage, Royster, Brooks, and Fenton for conspiring to make Plaintiff suffer by placing him in a cell without running water.

**Count 16:**  Fourteenth Amendment claim against Royster, Brooks, Schoenbeck, Jones, and Wills for denying Plaintiff due process in connection with the issuance of a false disciplinary ticket and the subsequent disciplinary hearing.

**Count 17:**  Claim against Jones, Schoenbeck, Royster, Brooks, and Fenton for conspiring to coverup the assault against Plaintiff that occurred on August 25, 2021.

**Count 18:**  Fourteenth Amendment claim against Jones, Schoenbeck, and Wills.

**Count 19:**  Failure to train claim against Wills and Jeffreys.

**Count 20:**  Illinois state law claim of negligent spoliation of evidence against John Doe for failing to photograph Plaintiff's injuries and document the assault on August 25, 2021.

**Count 21:**  Claim against John Doe 1, Royster, Brooks, and Fenton for conspiring to coverup the assault against Plaintiff that occurred on August 25, 2021.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed**

without prejudice as inadequately pled under the *Twombly*[1] pleading standard.

### Count 1

HIPAA prohibits the disclosure of a patient's medical information without his consent. *See* Pub. L. No. 104-191, 110 Stat. 1936 (1996). However, the statute does not create a private right of action to enforce this substantive prohibition, and the Seventh Circuit has held that HIPAA does not confer individual enforcement rights, either express or implied. *See Stewart v. Parkview Hosp.,* 940 F.3d 1013, 1015 (7th Cir. 2019). *See also Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010). Therefore, Count 1 against Regelsperger and Salger for violating Plaintiff's rights under HIPAA is dismissed with prejudice.

### Count 2

The ADA prohibits discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. However, the ADA is not violated by "a prison's simply failing to attend to the medical needs of its disabled prisoners." *Bryant v. Madigan,* 84 F. 3d 246, 249 (7th Cir. 1996). Although the First Amended Complaint asserts that Plaintiff suffers from a disability—mental illness—it is not alleged that he was denied a private conversation with a crisis team member because of his disability. *See Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 672 (7th Cir.2012). Furthermore, individual employees of the Illinois Department of Corrections cannot be sued under the ADA. *Id.* at 670. The proper defendant to Count 2 is the relevant state department or agency. *See* 42 U.S.C. § 12131(1)(b); *Jaros,* 684 F.3d at 670 n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director (in his official capacity). For these reasons, Count 2 is dismissed without prejudice.

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Count 3**

The Equal Protection Clause prohibits the singling out of a person for different treatment for no rational reason. To state a class-of-one equal protection claim, an individual must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff claims his equal protection rights under the Fourteenth Amendment were violated because Regelsperger refused to conduct a crisis evaluation in private. He states that when other inmates request a meeting with a crisis team member, the evaluation is done in private. This is sufficient to state an equal protection claim. Count 3 will proceed against Regelsperger.

Count 3 will also proceed against Salger for failing to intervene in the violation of Plaintiff's Fourteenth Amendment rights. *See Patrick v. City of Chicago*, 213 F. Supp. 3d 1033, 1053 (N.D. Ill. 2016) ("The Seventh Circuit has consistently recognized that a state actor's failure to intervene in the violation of another's constitutional rights may render him liable" under Section 1983).

**Count 4**

To state an Eighth Amendment claim for deliberate indifference, the plaintiff must plead that (1) the harm that befell him was objectively, sufficiently serious and a substantial risk to his or her health or safety; and (2) the individual defendants were deliberately indifferent to the substantial risk to his health and safety. *Collins v. Seeman,* 462 F. 3d 757, 760 (7th Cir. 2006).

Here, Plaintiff only states that his requests to speak to a crisis team member in private were denied by Defendants. There are no facts from which the Court can infer Plaintiff's safety was at risk and that Defendants were aware of substantial risk of danger or harm to him and ignored such risk. *See Seeman,* 462 F. 3d at 761 ("a request to see a crisis counselor, standing alone, is not

Page 8 of 16

sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of" harm to himself). Accordingly, Count 4 is dismissed.

## Civil Conspiracy: Counts 5, 11, 15, 17, and 21

Civil conspiracy claims are cognizable under Section 1983. *See Lewis v. Washington,* 300 F.3d 829, 831 (7th Cir. 2002). In order to state a civil conspiracy claim, "the plaintiff must [plead facts sufficient to] show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). Furthermore, conspiracy is not an independent basis of liability in Section 1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008). "For liability under § 1983 to attach to a conspiracy claim, defendants must conspire to deny plaintiffs their constitutional rights." *Hill v. Shobe,* 93 F.3d 418, 422 (7th Cir.1996). Thus, for Plaintiff's conspiracy claim to actionable, there must be some cognizable underlying constitutional violation.

Throughout the First Amended Complaint, Plaintiff alleges conspiracies between different groups of Defendants to deprive him of his rights. Count 5 alleging that Regelsperger, Salger, Royster, Brooks, and Fenton conspired to deny Plaintiff access to a crisis team member is dismissed. Because Plaintiff has failed to plead an underlying Eighth Amendment constitutional claim against Defendants (Count 4), there can be no civil rights claim for conspiracy to inflict cruel and unusual punishment by denying Plaintiff access to a crisis team member.

The remaining conspiracy claims in Counts 11, 15, 17, and 21 are also dismissed. Plaintiff's assertion that various individuals were in conspiracy with one another are conclusory, and he does not provide sufficient facts for the Court to plausible infer that there was a conspiratorial agreement between Defendants. *See Twombly,* 550 U.S. at 556-557 ("An allegation of parallel conduct and a bare assertion of conspiracy will not suffice").

**Counts 6, 7, 8, and 9**

Plaintiff's claims against Royster, Brooks, and Fenton for the use of excessive force against him on August 25, 2021, survive screening. *See Wilborn v. Ealey*, 881 F. 3d 998, 1006 (7th Cir. 2018).

Because Plaintiff's state law claims involve the same facts as his Eighth Amendment excessive force claim, the Court will exercise supplement jurisdiction, and Counts 7, 8, and 9 also survive screening against Royster, Brooks, and Fenton. *See* 28 U.S.C. § 1367(a); *Shea v. Winnebago Cty. Sheriff's Dep't*, 746 F. App'x 541, 547-48 (7th Cir. 2018) (discussing assault and battery under Illinois law); *Sornberger v. City of Knoxville, Ill*., 434 F.3d 1006, 1030 (7th Cir. 2006) (discussing intentional infliction of emotional distress under Illinois law); *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (discussing negligence under Illinois law).

**Count 10**

Plaintiff claims that Nurse Engelage acted with deliberate indifference by not conducting a "proper medical examination." Plaintiff claims that exam was improper because he still had a spit mask over his face and was shackled. He also asserts that she acted with deliberate indifference by failing to document all his injuries in order to coverup the misconduct of Defendants Royster, Brooks, and Fenton.

As pled, Plaintiff has failed to state a claim of deliberate indifference against Nurse Engelage. He does not state that because of the improper exam or the false recording of his injuries needed medical care was denied or delayed in anyway. Plaintiff's disagreement with how the exam was conducted does not establish deliberate indifference, and there is no constitutional right to accurate medical records. *See Berry v. Peterman,* 604 F. 3d 435, 441 (7th Cir. 2010) ("neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference"). Accordingly, Count 10 is dismissed.

**Count 12**

Plaintiff claims that after being shot with pepper balls and then later sprayed with "o.c. pepper spray," Royster, Brooks, and Fenton refused to let him clean and flush his eyes. As pled, Plaintiff's allegations of cruel and unusual punishment against Royster, Brooks, and Fenton are sufficient for Count 12 to proceed. *See Kervin v. Barnes,* 144 F. App'x 551, 552 (7th Cir. 2005).

**Counts 13 and 14**

Plaintiff has failed to state a claim for cruel and unusual punishment regarding the conditions of his confinement in cell 507 against Officer Engelage, Royster, Brooks, and Fenton. Plaintiff states that after he was placed in cell 507, he noticed the sink and toilet were not functioning. He alleges that Royster, Brooks, Fenton, and Officer Engelage were aware of the conditions of the cell because they were "responsible" for checking the cell before placing an inmate in the cell.

Negligence on the part of an official does not violate the Constitution, and it is not enough that the official should have known of a risk. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir.2004). "Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Id.* Further, as the Court previously stated in the initial merit review order (Doc. 18), the denial of running water to Plaintiff's cell, as pled, did not result in an extreme deprivation of life's necessities in violation of the Eighth Amendment. *See Ramirez v. Beatty,* No. 93–2306, 1994 WL 75897, at *3 (7th Cir. Mar. 8, 1994); *Harris v. Fleming,* 839 F. 2d 1232, 1235 (7th Cir. 1988). Count 13 is dismissed without prejudice.

Because Plaintiff is not proceeding on a constitutional conditions of confinement claim under Section 1983, the Court declines to exercise supplemental jurisdiction over the state law intentional infliction of emotional distress claim regarding the same set of facts. Count 14 is

dismissed without prejudice.

## Count 16

For the same reasons stated in the original merit review order, Plaintiff's due process claim is dismissed. In the First Amended Complaint, Plaintiff alleges he was placed in segregation for three months where he was isolated for most of the day and not able to participate in various prison programs. He describes the environment as "unsanitary." Plaintiff also asserts he was sanctioned with three months C-grade status and six months visiting restriction. Plaintiff states that as a prisoner designated as SMI (serious mental illness), the segregation environment caused his mental health to deteriorate.

Based on these allegations, due process was not required prior to placing Plaintiff in segregation for three months, demoting him to C-grade status, and imposing visitor restrictions. (*See* Doc. 18, p. 8). As the Court previously stated, prisoners "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or disciplinary." *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017). Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hardaway v. Meyerhoff*, 734 F. 3d 740, 743 (7th Cir. 2013) (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). Plaintiff's three months in segregation, as described, did not impose an "atypical and significant hardship" compared to prison life generally. *See Kervin v. Barnes,* 787 F. 3d 833, 837 (7th Cir. 2015) (the courts are to consider "all of the circumstances of a prisoner's confinement in order to ascertain whether has been deprived of liberty"). *See also Marion v. Columbia Corr. Inst.,* 559 F. 3d 693, 697-98 nn. 2-3 (7th Cir. 2009) (noting that up to 90 days in segregation relatively short depending on the conditions); *McCoy v. Atherton,* 818 F. App'x 538, 541-42 (7th Cir. 2020) (three months in segregation in a dirty cell near physically and mentally ill inmates not enough to

implicate due process protections); *Obriecht v. Raemisch*, 565 F. App'x 535, 540 (7th Cir. 2014) (finding that 78 days in alleged deplorable conditions was not a "atypical and significant hardship"); *Lisle v. Welborn*, 933 F. 3d 705, 721 (7th Cir. 2019) (four months in segregation in combination of a vague description of cells did not allow jury to reasonably infer that the conditions imposed a significant hardship). Because the punishment imposed did not deprive Plaintiff of a liberty interest, due process was not required. This means that there was no constitutional violation for the alleged improper procedures implemented – false disciplinary ticket and faulty disciplinary hearing – prior to his placement in segregation.[2] Count 16 is dismissed.

### Counts 18 and 19

Plaintiff claims that Jones and Schoenbeck have an unconstitutional policy of not calling witnesses, not reviewing evidence, and just taking the word of staff and officials during the disciplinary hearing process. He also states that Warden Wills and Director Jeffreys have failed to train Adjustment Committee members throughout Illinois and failed to update disciplinary procedures. Due to this conduct, Plaintiff states his rights under the Due Process Clause and the Equal Protection Clause were violated.

As discussed above, because Plaintiff was not denied a protected liberty interest, he does not have a claim for a procedural due process violation. Thus, Count 18 is dismissed.

Plaintiff has also failed to state a claim under the Equal Protection Clause. It appears that Plaintiff is attempting to state a class-of-one claim because he states he was "treated unfairly and singled out," but this statement is not supported by any of the facts in the First Amended

---

[2] In his motion to amend, Plaintiff states that the Court failed to address the false disciplinary ticket and the disciplinary hearing and only focused on the liberty interest. (Doc. 30, p. 1). The Court did not address the procedures employed when reviewing the initial Complaint for the same reasons it does not do so here. Plaintiff was not entitled to due process before being punished since the segregation conditions, as pled, did not impose an "atypical and significant hardship." Neither does reduction in grade status and the loss of visitation privileges implicate a liberty interest. *See Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015); *Hoskins v. Lenear*, 395 F. 3d 372, 375 (7th Cir. 2005).

Complaint. Plaintiff asserts that Jones and Schoenbeck have a policy of implementing improper procedures during disciplinary hearings and Wills and Jeffreys failed to train staff statewide. It is not clear how he was treated differently from other inmates or how Defendants' conduct discriminated against him if such acts were done as common practices and throughout the state as alleged. Count 19 is dismissed.

### Count 20

Plaintiff claims that on September 11, 2021, he spoke with John Doe about the assault incident on August 25, 2021. He asked John Doe to take pictures of his injuries for legal reasons. Plaintiff states John Doe failed his duty as an officer to take pictures of his injury. John Doe also "tampered" with his statement by changing it. Plaintiff did not sign the statement or give permission to John Doe to sign for him. The Court finds the Plaintiff has sufficiently stated a claim for negligent spoliation of evidence, and Count 20 will proceed against John Doe. *See Boyd v. Travelers Ins. Co.,* 652 N.E.2d 267, 273 (Ill. 1995).

### IDENTIFICATION OF JOHN DOE

Plaintiff shall be allowed to proceed with Count 20 against John Doe, but he must identify the unknown defendant with particularity before service of the First Amended Complaint can be made on him. Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the individual. *Rodriguez*, 577 F.3d at 832. Warden Anthony Wills (official capacity only) will remain named as a defendant for purposes of identifying this unknown person. Once the name of this officer is discovered, Plaintiff must file a motion to substitute the newly identified defendant in place of John Doe.

### DISPOSITION

For the reasons stated above, the Motion to Amend the Complaint is **GRANTED.** (Doc. 30). The Clerk of Court is **DIRECTED** to file the proposed amended complaint submitted to the

Court on April 26, 2023, as the "First Amended Complaint."

The First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 3** shall proceed against Regelsperger and Salger. **COUNTS 6, 7, 8, 9,** and **12** will proceed against Royster, Brooks, and Fenton. **COUNT 20** will proceed against John Doe. **COUNTS 1, 2, 4, 5, 10, 11, 13, 14, 15, 16, 17, 18, 19,** and **21 are dismissed.** Because there are no surviving claims against Defendants Jones, Schoenbeck, Nurse Engelage, Officer Engelage, and Jeffreys, they are **DISMISSED without prejudice.** All claims against Anthony Wills are also dismissed, but he remains named a defendant (official capacity only) for purposes of identifying the unknown defendant, and he need only file a notice of appearance in this matter in lieu of any other response or answer to the First Amended Complaint.

Because Plaintiff's claims involve allegations regarding injuries sustained from the use of excessive force, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Regelsperger, Salger, Wills (official capacity only), and John Doe (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his

last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

All Defendants are **ORDERED** to file an appropriate responsive pleading to the First Amended Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   July 11, 2023**

  *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**