**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **BRANDALE BLACKBURN, #M54199**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**PHILIP K. ROYSTER, *et al.*,**<br><br>**Defendants.** | **Case No. 22-CV-01713-SPM** |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is Defendants Chelsea Regelsperger and Paige Salger's Motion for Summary Judgement (Doc. 103) and Defendants Terry E. Brooks, Zachary D. Fenton, Philip K. Royster, and Jerod Schanz's Motion for Partial Summary Judgment (Doc. 107). Having been fully informed of the issues presented, Defendants Regelsperger and Salger's Motion for Summary Judgement (Doc. 103) is **GRANTED** and Defendants Brooks, Fenton, Royster, and Schanz's Motion for Patial Summary Judgment (Doc. 107) is **GRANTED in part and DENIED in part**.

## PROCEDURAL BACKGROUND

Plaintiff Brandale Blackburn is an inmate currently incarcerated at Pontiac Correctional Center in Illinois. (Doc. 35, p. 2). On July 7, 2023, Plaintiff filed his First Amended Complaint for alleged violations of his constitutional rights that occurred while Plaintiff was at Menard Correctional Center ("Menard"). (Doc. 35).

The Court screened Blackburn's First Amended Complaint pursuant to 28

U.S.C. § 1915A and allowed him to proceed on the following counts: (1) equal protection right violation claims under the Fourteenth Amendment against Regelsperger and Salger (collectively the "Wexford Defendants"); (2) an excessive use of force claim against Royster, Brooks, and Fenton (collectively the "ERT Defendants"); (3) Illinois state law claims of assault and battery, intentional infliction of emotional distress, and negligence against the ERT Defendants; (4) Eighth amendment cruel and unusual punishment claims against the ERT Defendants; and (5) a claim of negligent spoliation of evidence against Jerod Schanz. (Doc. 34, pp. 8, 10–11, 14).[1] The Court granted Blackburn's Motion to Appoint Counsel on December 3, 2024, and assigned Attorney Michael D. Haeberle, who entered his appearance on behalf of Blackburn on December 5, 2024. (Docs. 84, 87, 88).

The Wexford Defendants filed a Motion for Summary Judgement on May 1, 2026. (Doc. 103). Blackburn did not file a response in opposition. The ERT Defendants and Schanz filed a Motion for Partial Summary Judgement on May 11, 2026. (Doc. 107). Again, Blackburn did not file a response in opposition.

## RELEVANT FACTUAL BACKGROUND

As Behavioral Health Technicians employed by Wexford Health Sources, Regelsperger was facilitator and Salger was co-facilitator of the Behavioral Management Unit group therapy sessions at Menard. (Doc. 104-2, pp. 1–2; Doc. 104-3, pp. 1–2). Behavioral Health Technicians had two primary functions—to facilitate educational group therapy sessions and to respond to requests for crisis intervention.

---

[1] Blackburn originally filed the claim for spoliation of evidence against John Doe who was later identified as Jerod Schnaz. The Court subsequently granted Blackburn's Motion to Substitute Newly Identified Defendant. (Docs. 71, 75).

(Doc. 104-2, pp. 1–2; Doc. 104-3, pp. 1–2). Behavioral Health Technicians are not licensed clinicians and, therefore, must report back to a licensed clinician who can prescribe or order treatments and therapies. (Doc. 104-2, pp. 1–2; Doc. 104-3, pp. 1–2). Group therapy sessions typically include one or two facilitators and five to six inmates. (Doc. 104-2, p. 2; Doc. 104-3, p. 2). For safety, a HIPAA trained correctional officer is always present at these group sessions. (Doc. 104-2, p. 2; Doc. 104-3, p. 2).

On August 25, 2021, Blackburn attended a group therapy mental health session at Menard, run by Regelsperger and Salger. (Doc. 104-1, pp. 16–17, 22). During the group session, another inmate became hostile, eventually prompting the Wexford Defendants to terminate the session. (Doc. 104-1, p. 19; Doc. 104-2, pp. 2–3; Doc. 104-3, pp. 2–3). Security staff began to remove the inmates from the group session room. (Doc. 104-2, p. 3; Doc. 104-3, p. 3). According to protocol, and for their own security, the Wexford Defendants began to exit the room as inmates were removed by security staff. (Doc. 104-2, p. 2; Doc. 104-3, p. 2).

Before the Wexford Defendants exited the group session room, Blackburn informed the Wexford Defendants that he needed to speak to a crisis team member. (Doc. 104-1, p. 18; Doc. 104-2, p. 3; Doc. 104-3, p. 3). Regelsperger attempted to perform a crisis evaluation on Plaintiff, but Plaintiff told the Wexford Defendants that he did not feel comfortable getting a crisis evaluation done in a group setting because he wanted confidentiality. (Doc. 104-1, pp. 18–19, 71–72). At that time, the other members of the mental health group were in a side room, but they could hear everything. (*Id.* at 26).

Regelsperger asked Blackburn if he was refusing his crisis evaluation, to which

he responded that he was not refusing. (*Id.* at 22, 71–72). Regelsperger did not perform a crisis evaluation on Blackburn, so he informed Salger that Blackburn needed a crisis evaluation. (*Id.* at 23, 72). Salger said nothing in response. (*Id.* at 23). Blackburn felt he was singled out and treated unfairly by the Wexford Defendants' conduct. (*Id.* at 136). Later that day, at 11 a.m., Blackburn received a crisis evaluation conducted by Rhiana Draper, a licensed clinical social worker. (Doc. 104-2, p. 4; Doc. 104-3, p. 4; Doc. 104-6).

The ERT Defendants retrieved Blackburn from the group session at approximately 9:40 a.m. (Doc. 108-4, pp. 1–3, 5). At that time, Royster, Brooks, and Fenton were acting as members of the Emergency Response Team ("ERT") at Menard. (Doc. 108-1, p. 12; Doc. 108-2, pp. 11, 14; Doc. 108-4, pp. 1–3, 5).

As ERT members, Royster, Brooks, and Fenton were escorting Blackburn to his cell from the Mental Health Group. (Doc. 108-1, p. 12; Doc. 108-2, pp. 11, 14; Doc. 108-4, pp. 1–3, 5). Once they reached 5 Gallery flag, Blackburn stopped and refused to return to his cell, ignoring multiple direct orders. (Doc. 108-3 p. 18; Docs. 108-4, pp. 1–3, 5). The ERT Defendants claim Blackburn became combative and headbutted Brooks in the helmet. (Doc. 108-3, p. 18; Doc. 108-4, pp. 1–3, 5). However, Blackburn alleges that he only verbally questioned the ERT Defendants when they began to take him to his cell. (Doc. 104-1, pp. 29–30)[2]. Blackburn expected to be taken to North II infirmary, as is typical when an inmate requests a crisis team. (*Id.*). Blackburn asserts that ERT Defendants then became aggressive and beat him. (*Id.*).

[2] Defendants Regelsperger and Salger introduced Plaintiff's Deposition in their Motion for Summary Judgement (Docs. 104, 104-1). The Court will consider Plaintiff's Deposition in addressing both Motions for Summary Judgement.

The ERT Defendants allege that when Fenton stepped in to assist the physically combative Blackburn, he was also headbutted in the helmet by Blackburn. (Doc. 108-3, p. 18; Doc. 108-4. p. 1). Royster then launched three PepperBall projectiles at Blackburn, targeting the lower major muscle groups. (Doc. 104-1, p. 86; Doc. 108-3, p. 18; Doc. 108-4, pp. 1–3, 5). After deploying the PepperBall projectiles, Fenton and Brooks were able to take Blackburn to the ground to gain control of the situation. (Doc. 108-3, p. 18; Doc. 108-4, pp. 1–3, 5). The ERT Defendants contend that in the struggle, Blackburn bit Royster on the left hand. (Doc. 108-3, p. 18; Doc. 108-4 pp. 1–3, 5).

After the incident, the ERT Defendants escorted Blackburn to the infirmary where he was put in a holding area so he could speak with medical and mental health professionals. (Doc. 108-1, pp. 31–32; Doc. 108-2, p. 26). Blackburn asserts that he notified the ERT Defendants about his injuries whilst in the holding area. (Doc. 104-1, p. 98). The ERT Defendants claim that they offered Blackburn the opportunity to wash his eyes out at the eyewash station next to the medical holding cell, but Blackburn refused. (Doc 108-1, pp. 31–32; Doc. 108-2, p. 26).

While in the infirmary, Blackburn was seen by a nurse. (Doc. 104-1, p. 98). However, the nurse could not properly assess Blackburn as he was wearing a spit mask, and his arms were handcuffed behind his back. (*Id.* at 99–100). The nurse did not try to clean Blackburn's face or eyes and did not take him to the nearby flushing station. (*Id.* at 99, 101). Blackburn further asserts that the ERT Defendants never took him to the eye wash station and never asked if he wanted to go to the eyewash station despite Blackburn telling the officers he needed to flush his eyes. (*Id.* at 101–

02). Blackburn also contends that ERT Defendants heard him "loud and clear" when he told them he wanted to flush his eyes. (*Id.* at 103).

Blackburn states that while he was in the infirmary holding cell, Fenton directed racial slurs at him, and Royster sprayed Blackburn in the face with pepper spray for "no apparent reason." (*Id.* at 105). However, Royster claims he was not carrying pepper spray on him that day. (108-1, p. 29). After this, Blackburn once again told the ERT Defendants that he needed to flush his eyes. (104-1, p. 108). The ERT Defendants did not take Blackburn to flush his eyes (*Id.* at 105). Instead, they took Blackburn to a new cell where the sink and toilet were not working. (*Id.* at 105–06, 108). After putting Blackburn in the cell, the ERT Defendants had no other involvement with him that day. (*Id.* at 107–08). Around 2:00 p.m., Blackburn retained access to water when the gallery officer resumed the hot water to his cell. (*Id.* at 109).

Blackburn's claims against Schanz arise from the ensuing investigation of the incident that occurred on August 25, 2021. During his investigation, Schanz interviewed the ERT Defendants, Correctional Officer Evans, and Blackburn. (Doc. 108-4, pp. 5–37). Schanz also reviewed Blackburn's medical records, mental health disciplinary review, disciplinary reports, and the final summary report. (*Id.*). Schanz interviewed Blackburn on September 11, 2021, during which Blackburn complained of bruising. (Doc. 108-3, p. 38; Doc. 104-1, p. 111). However, Schanz says he saw no bruising or injuries on Blackburn, and his medical records reported no injuries other than where the PepperBalls hit him. (Doc. 108-3, p. 38; Doc. 108-4, pp. 24–26). Schanz states Blackburn refused to sign the investigational interview report. (Doc. 108-4, pp. 22–23). Conversely, Blackburn says that Schanz "never let" him sign the report and

cannot recall if Schanz asked him to sign it. (Doc 104-1, pp. 113–14). Schanz concluded the investigation and determined that the use of force was justified per IDOC policy and that Royster "had to compel compliance with a lawful order to ensure the safety and security of the facility and to protect any other person from physical assault, injury or death." (Doc 108-3, p. 18; Doc 108-4, 7).

Blackburn purports that his statement drafted by Schanz was an inaccurate and falsified retelling of what Blackburn relayed to Schanz during the interview. (Doc 104-1, pp. 112–13). Also, Blackburn claims he asked Schanz to take pictures of his injuries, but Schanz did not do so. (*Id.* at 112). Blackburn alleges extensive injuries arising out of the incident, including a swollen face, a bleeding and twisted wrist, a bleeding and injured ankle, bruising on the back, legs, and neck, and mental health issues. (*Id.* at 119–21).

## APPLICABLE LAW AND LEGAL STANDARDS

The Court shall grant summary judgement only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); s*ee Dale v. Poston*, 548 F.3d 563, 568-69 (7th Cir. 2008). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of fact exists, the Court "considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant." *Miksis v. Evanston Twp. High Sch. Dist. # 202*, 235 F.Supp.3d 960, 984

(N.D. Ill. 2017) (citing *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013)). Although a non-movant receives the benefit of conflicting evidence and reasonable inferences, the movant is still required to produce sufficient evidence to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago Cnty.*, Illinois, 74 F.4th 496, 500 (7th Cir. 2023). Further, the Court will not weigh credibility or make credibility determinations, as this function is reserved for a jury. *Anderson*, 477 U.S. at 255.

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). The nonmovant cannot simply rely on its pleadings. Rather, the nonmovant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 394 (7th Cir. 1993); *Celotex*, 477 U.S. at 323–24)).

## ANALYSIS

### I. Count 3 – Fourteenth Amendment Violation against the Wexford Defendants

The Wexford Defendants argue that they are entitled to summary judgement on Blackburn's equal protection rights and failure to intervene claims because Blackburn has not, and cannot, produce evidence that the Wexford Defendants violated Blackburn's equal protection rights. (Doc. 103).

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, §1. Here, Plaintiff brings a class-of-one equal protection claim. A class-of-one equal protection claim requires a showing that the plaintiff was: (1) intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Ind. Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024).

In the prison context, officials may treat inmates differently if the unequal treatment is rationally related to a legitimate penological interest. *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016); *Yoder v. Prince*, No. 23-2334, 2024 WL 3220407, at *2 (7th Cir. June 28, 2024). Under the class-of-one equal protection theory, a plaintiff must negate "any reasonably conceivable state of facts that could provide a rational basis" for the difference in treatment. *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 772 (7th Cir. 2021). Thus, if a court can identify a conceivable rational basis for the defendant's actions, that is enough to grant summary judgement. *Chi. Studio Rental,*

*Inc. v. Ill. Dep't of Com.*, 940 F.3d 971, 980 (7th Cir. 2019); *Anna's Café Place LLC v. Vill. of Westchester*, No. 25-2019, 2026 WL 1452564, at *3 (7th Cir. May 22, 2026). The conceivable rational basis for the differential treatment need not be the actual basis for defendant's actions. *Ind. Land Tr. #3082* at 699 (quoting *Chi. Studio Rental, Inc.* at 980).

Here, there is a rational basis for the Wexford Defendants' conduct. At the time Blackburn requested a crisis evaluation, the Wexford Defendants were not able to perform crisis evaluation with full confidentiality. The positioning of other inmates and security personnel in the room was determined by protocol and reasonable safety concerns. Regelsperger did not refuse to provide a crisis evaluation, and Blackburn received a confidential crisis evaluation once the other inmates were secure.

The penological interest of security and safety forms a conceivable rational basis for any differential treatment of Blackburn. Thus, Blackburn's Equal Protection claims fail, and Blackburn's failure to intervene claim fails because it is contingent on the Regelsperger's conduct being unconstitutional. Therefore, Defendants Chelsea Regelsperger and Paige Salger's (Doc. 103) Motion for Summary Judgement is **GRANTED**.

## II. Count 12 – Eighth Amendment Violation against the ERT Defendants

The ERT Defendants argue that they are entitled to summary judgement on Blackburn's cruel and unusual punishment claims because: (1) the ERT Defendants are entitled to immunity for Blackburn's tort claim under the Illinois State Lawsuit Immunity Act; and (2) the ERT Defendants were not deliberately indifferent to an excessive risk to Blackburn's health or safety (Doc. 107, p. 2).

**A. State Lawsuit Immunity Act**

The ERT Defendants argue that the Illinois State Lawsuit Immunity Act bars Blackburn's Eighth Amendment claim against them. (Doc. 107, p. 2; Doc. 108, p. 8). The State Lawsuit Immunity Act provides that "the State of Illinois shall not be made a defendant or party in any court," except in the Illinois Court of Claims. *T.S. v. Cty. of Cook*, 67 F.4th 884, 890–91 (7th Cir. 2023); 745 ILL. COMP. STAT. 5/1. State sovereign immunity may extend to claims against state employees, even when they are sued in their individual capacities, when the action is "nominally one against the servants or agents of the State" but "the real claim is against the State of Illinois itself and . . . the State of Illinois is the party vitally interested." *Murphy v. Smith*, 844 F.3d 653, 656 (7th Cir. 2016).

However, the officer suit exception provides that state sovereign immunity does not apply to state-law claims against a state employee who has violated statutory or constitutional law. *Murphy*, 844 F.3d at 655, 659 (citing *Leetaru v. Board of Trustees of University of Illinois*, 32 N.E.3d 583 (Ill. 2015)). "This exception is premised on the principle that while legal official acts of state officers are regarded as acts of the State itself, illegal acts performed by the officers are not." *Murphy*, 844 F.3d at 659 (citation omitted); *see Frakes v. Warren*, No. 3:23-CV-2963-MAB, 2026 2026 WL 1328219, at *2–3 (S.D. Ill. May 13, 2026) (denying motion to dismiss when the plaintiff alleged that the defendants' conduct underlying the negligence claim also violated the Eighth Amendment). Furthermore, courts have found that a constitutional claim is not barred by the State Lawsuit Immunity Act when a plaintiff names defendants in their individual capacity rather than their official capacity. *See*

*T.S. v. Cty. of Cook*, 67 F.4th 884, 894 (7th Cir. 2023) (holding the officer suit exception applies in an official capacity suit only when a plaintiff seeks to enjoin state officials from ongoing statutory or constitutional violations); *Haywood v. Wexford Health Sources*, No. 3:22-CV-731-NJR, 2026 WL 1172850 (S.D. Ill. Apr. 30, 2026) (granting dismissal for claims against defendants in their official capacity, but denying dismissal for identical Eighth Amendment deliberate indifference claims against defendants in their individual capacity); *Walsh v. Brown*, No. 25-cv-194-SMY, 2026 WL 1965077 (S.D. Ill. July 7, 2026) (holding sovereign immunity did not warrant dismissal of the claims against the defendant for monetary damages as the plaintiff properly named the defendant in both his individual capacity for damages, and in his official capacity for prospective injunctive relief).

Here, Blackburn does not specify whether he is suing the ERT Defendants in their official or individual capacities, but in the original complaint, Blackburn sought monetary damages. (Doc. 1, p. 23). Therefore, Blackburn's Eighth Amendment claims cannot be brought against the ERT Defendants in the official capacities. As such, the Court will analyze the Eighth Amendment claims against the ERT Defendants in their individual capacities.

The ERT Defendants wrongly characterize Count 12 as a tort claim, rather than a constitutional violation claim. (Doc. 108, p. 10). Similarly, the ERT Defendants' reliance on *T.S. v. Cty. of Cook* is misplaced. (*Id.* at 9). In *T.S.*, the Seventh Circuit held that a plaintiff's claim against a defendant in his personal capacity should have been analyzed —and dismissed— under the *Healy* factors. *T.S.* 67 F.4th at 892, 894 (citing *Healy v. Vaupel*, N.E.2d 1240, 1247 (1990)). However, the

relevant claim in *T.S.* was a fiduciary duty violation rather than a constitutional violation, and the Seventh Circuit specifically did not overturn the officer suit exception. *Id*. at 889, 894; *see Murphy*, 844 F.3d at 660 (holding that sovereign immunity did not bar plaintiff's claim because he alleged that the defendants acted in violation of statutory or constitutional law); *Thompson v. Wexford Health Sources Inc.*, No. 20 CV 1191, 2024 WL 4826684 (N.D. Ill. Nov. 19, 2024) (holding that sovereign immunity did not shield defendant from liability when his conduct was unconstitutional).

Here, Blackburn claims his Eighth Amendment rights were violated. Therefore, the ERT Defendants are not afforded sovereign immunity under the State Lawsuit Immunity Act.

### B. Eighth Amendment Cruel and Unusual Punishment

The Eight Amendment, incorporated to apply to the states pursuant to the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on individuals convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006); *see* U.S. CONST. AMEND. VIII; U.S. CONST. AMEND. XIV, § 1. "After incarceration, only the 'unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)); *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Unnecessary and wanton infliction of pain can stem from physical force or inhumane conditions that do not provide for a detainee's basic human needs. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Whitaker v. Dempsey*, 144 F.4th 908, 922 (7th

Cir. 2025) (citing *Whitley* 475 U.S. at 319). Inmates have the right to "humane conditions of confinement," which include adequate food, clothing, shelter, and medical care, and prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)); *Daugherty v. Harrington*, 906 F.3d 606, 611 (7th Cir. 2018). Among other things, these principles prohibit prison officials from "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Zentmyer v. Kendall Cty.*, 220 F.3d 805, 810 (7th Cir. 2000) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)).

An Eighth Amendment claim survives summary judgment only if both an objective and a subjective element are satisfied. *See LaBrec v. Walker*, 948 F.3d 836, 841 (7th Cir. 2020): *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). "[F]irst, an objective showing that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety—and second, a subjective showing of a defendant's culpable state of mind." *Isby*, 856 F.3d at 521 (7th Cir. 2017) (internal citations and quotation marks omitted); *Farmer*, 511 U.S. at 834.

First, the objective element is satisfied when the evidence supports the conclusion that the plaintiff had an "objectively serious medical need." *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013); *King* 680 F.3d at 1018 (quoting *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)). An objectively serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is

so obvious that even a lay person would perceive the need for a doctor's attention." *McGee*, 721 F.3d at 480 (citing *King*, 680 F.3d at 1018). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Generally, the use of "mace, tear gas or other chemical agent of the like nature when reasonably necessary . . . to subdue recalcitrant prisoners" does not constitute a sufficiently serious injury under the Eighth Amendment. *Soto v. Dickey*, 744 F.2d 1260, 1270–71 (7th Cir. 1984). However, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.* at 1270. Exposure to a chemical agents can "result in a serious medical condition that implicates the Eighth Amendment". *McCloud v. Vanschoyck*, No. 21-cv-00429-JPH-MKK, 2024 WL 229740, at *7 (S.D. Ind. Jan. 19, 2024) (denying defendants summary judgement motion when plaintiff presented evidence that he was sprayed with OC spray, left in his cell for hours, reported to prison officials that he was in distress, and was not allowed to shower for days); *see also Kervin v. Barnes*, 144 Fed.App'x 551, 552 (7th Cir. 2005) (finding that detaining an inmate for eight hours after using chemical agents without allowing him to wash his face amounts to the wanton infliction of pain and suffering, but that holding the inmate until the disturbance has clearly ended does not).

Here, there is a genuine issue of material fact as to whether the ERT Defendants utilized the PepperBall launcher or the pepper spray in a quantity

greater than necessary or for the sole purpose of punishment or infliction of pain. (Doc. 104-1, pp. 29–30, 86, 105; Doc. 108-1, pp. 31–32; Doc 108-3, p. 18; Doc. 108-4, pp. 1–3, 5). Based on Blackburn's allegations, which must be taken as true, a reasonable juror could find that Blackburn's injury was sufficiently serious to constitute an Eighth Amendment violation.

The appropriate inquiry when an inmate alleges that a prison official failed to attend to a serious medical need is whether the officials acted with "deliberate indifference." *Hudson*, 503 U.S. at 5; *see Estelle*, 429 U.S. at 104. Deliberate indifference describes a state of mind more blameworthy than negligence, with the standard comparable to criminal recklessness. *See Farmer*, 511 U.S. at 835; *King*, 680 F.3d at 1018. The prison officials must have known of, and disregarded, a risk of harm to the inmate. *Farmer*, 511 U.S. at 834. Thus, to satisfy the subjective element, Blackburn must demonstrate a genuine issue of fact on the question of whether the ERT Defendants were aware of his serious medical need and were deliberately indifferent to it. *See Wynn*, 251 F.3d at 593.

Here, Blackburn demonstrates a genuine issue of fact as to whether the prison officials were aware of his serious medical needs and were deliberately indifferent to them. Blackburn states that he informed the ERT Defendants of his need to flush his eyes multiple times, and that they heard him "loud and clear" when he did so. (Doc. 104-1, pp. 98, 103, 108). Moreover, the ERT Defendants' assertion that Blackburn was given the opportunity to flush his eyes is directly contested by Blackburn's sworn testimony that he was never allowed, or offered the chance, to flush his eyes. (Doc. 104-1, pp.101–02; Doc 108-1, pp. 31–32; Doc. 108-2, p. 26). Further, according to

Blackburn's version of events, the ERT Defendants pepper sprayed him even after he informed them that he was in pain from the PepperBall launcher. (Doc. 104-1, p. 105). Blackburn's testimony introduces genuine issues of material facts from which a jury could reasonably find that the ERT Defendants were deliberately indifferent to Blackburn's serious medical needs.

Therefore, Defendants Terry E. Brooks, Zachary D. Fenton, Philip K. Royster, and Jerod Schanz's (Doc. 107) Motion for Partial Summary Judgment on Count 12 is **DENIED**.

## III. Count 20 – Negligent Spoliation of Evidence Against Schanz

Schanz argues that he is entitled to summary judgment on Blackburn's claim against him because: (1) the claim is barred by the immunity provided in the State Lawsuit Immunity Act; and (2) he did not owe Blackburn any duty to preserve evidence. (Doc. 107, p. 2).

Under Illinois law, spoliation of evidence is treated as a negligence action. *Duran v. Town of Cicero*, 653 F.3d 632, 644 (7th Cir. 2011) (quoting *Boyd v. Travelers Ins. Co.*, 652 N.E.2d 267, 270–71 (Ill. 1995)). "Accordingly, a plaintiff claiming spoliation of evidence must prove that: (1) the defendant owed the plaintiff a duty to preserve the evidence; (2) the defendant breached that duty by losing or destroying the evidence; (3) the loss or destruction of the evidence was the proximate cause of the plaintiff's inability to prove an underlying lawsuit; and (4) as a result, the plaintiff suffered actual damages." *Moore v. Ziegler*, No. 16-CV-1239-NJR-GCS, 2019 WL 1353947, at *7 (S.D. Ill. Mar. 26, 2019) (quoting *Martin v. Keeley & Sons, Inc.*, 979 N.E.2d 22, 27, (Ill. 2012)). The general rule in Illinois is that there is no duty to

preserve evidence. *Martin* 979 N.E.2d at 28.

As previously noted, courts have found that constitutional claims are not barred by the State Lawsuit Immunity Act when a plaintiff names a defendant in their individual capacity rather than in their official capacity. *See T.S. v. Cty. of Cook*, 67 F.4th 884, 894 (7th Cir. 2023); *Haywood v. Wexford Health Sources*, No. 3:22-CV-731-NJR, 2026 WL 1172850 (S.D. Ill. Apr. 30, 2026); *Walsh v. Brown*, No. 25-cv-194-SMY, 2026 WL 1965077 (S.D. Ill. July 7, 2026). Therefore, as with the ERT Defendants, the Court will analyze Blackburn's claim against Schanz in his individual capacity.

When the claim in question is not a constitutional or statutory violation, courts must apply the factors set forth in *Healy* to determine whether the claim will be barred by the State Lawsuit Immunity Act. *See T.S.*, 67 F.4th at 894–95. Blackburn claims negligent spoilation of evidence, which is not a constitutional or statutory violation. As such, Blackburn's claim against Schanz must be assessed under *Healy* to determine whether the claim is really against the State of Illinois itself, and if so, the claim must be dismissed without prejudice and litigated in the Illinois Court of Claims. *See Jinkins v. Lee*, 807 N.E.2d 411, 417 (Ill. 2004). An action brought against a state employee is considered one against the state when:

> [T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*T.S.*, 67 F.4th at 892 (citing *Healy*, 549 N.E.2d at 1247).

First, whether "an agent or employee of the State acted beyond the scope of his authority, depends on whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." *T.S.*,67 F.4th at 892 (internal citations and quotations omitted). Blackburn has not made any allegations that Schanz acted outside the scope of his authority through wrongful acts. In fact, it is Schanz's authority, provided to him by his State employment, to investigate and assess grievance claims at Menard. (Doc. 108-3, p. 12).

Second, the Court must analyze whether the alleged breach of duty—spoilation of evidence—was owed to the public generally, independent of Schanz's state employment. *Healy*, 549 N.E.2d at 1257. Illinois law imposes no general duty to preserve evidence. *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 609 (7th Cir. 2016); *Martinez v. Abbott Labs.*, 356 F. Supp. 2d 898, 903. Rather, such a duty can only be created by agreement, contract, statute, or other special circumstances. *Schaefer* 839 F.3d at 909; *Martinez* F. Supp. 2d at 903. A state employee's duty may arise independently of state employment only when it exists *regardless* of employment by the state. *T.S.*, 67 F.4th at 893. Here, the source of any duty Schanz has to Blackburn arises solely out of Schanz's state employment because Illinois does not impose a general duty to preserve evidence.

Finally, it must be determined whether the alleged breach involved matters ordinarily within the normal and official functions of Schanz's state employment. *Id.* at 892. Here, Blackburn's complaint involves matters ordinarily within Schanz's normal and official functions of the State. As previously noted, it is within Schanz's authority, provided to him by his state employment, to investigate and assess

grievance claims at Menard. (Doc. 108-3, p. 12).

For the foregoing reasons, the Court finds that Count 20 is actually a claim against the State of Illinois and is barred by sovereign immunity. Therefore, Defendants Terry E. Brooks, Zachary D. Fenton, Philip K. Royster, and Jerod Schanz's (Doc. 107) Motion for Partial Summary Judgment on Count 20 is **GRANTED**.

## CONCLUSION

For the reasons set forth above, Defendants Chelsea Regelsperger and Paige Salger's (Doc. 103) Motion for Summary Judgement is **GRANTED** and Defendants Terry E. Brooks, Zachary D. Fenton, Philip K. Royster, and Jerod Schanz's (Doc. 107) Motion for Partial Summary Judgment is **GRANTED in part and DENIED in part.** Count 3 and 20 of Plaintiff Brandale Blackburn's First Amended Complaint are **DISMISSED with prejudice**. Defendants Chelsea Regelsperger, Paige Salger, and Jerod Schnaz are **DISMISSED** from this case.

**IT IS SO ORDERED.**

**DATED: August 24, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**